UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| CLAUDELL CONWAY, SR. | CIVIL ACTION |
|---|---|
| VERSUS | |
| | NO. 18-33-JWD-EWD |
| DARREL VANNOY, ET AL. | |

## RULING AND ORDER

Pending before the Court is the Motion to Dismiss filed by Defendants Darrel Vannoy, James LeBlanc, the Department of Public Safety and Corrections, and the State of Louisiana (collectively, the "defendants"). (Doc. 16). Plaintiff Claudell Conway, Sr., opposes the motion. (Doc. 20). The defendants have filed a reply brief in support of their motion. (Doc. 22). Oral argument is not necessary. After careful consideration of the parties' arguments, the facts alleged, and the applicable law, and for the following reasons, the Motion to Dismiss (Doc. 16) is granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On January 17, 2018, Plaintiff Claudell Conway, Sr.,[1] filed suit in connection with the death of his son, Clydell Conway, Jr., at the Louisiana State Penitentiary ("LSP") in Angola, Louisiana. (Doc. 5-1). Named as Defendants are the State of Louisiana ("State"); Darrel Vannoy, Warden of LSP; the Louisiana Department of Public Safety and Corrections ("DPSC"); and DPSC Secretary, James LeBlanc. (*Id.*). Plaintiff has also named "ABC Insurance Company" and "unknown staff" as Defendants. (*Id.*).

On January 20, 2017, Clydell committed suicide in his cell at LSP. (Doc. 5-1 at 6). Clydell had been incarcerated at LSP since 2016 and "was a known suicide risk," having threatened or

---

[1] For reasons unknown to the Court, Plaintiff is referred to as "Claudell Conway, Sr. a.k.a. Clydell Conway, Sr." (Doc. 5-1 at 1). For clarity's sake, the Court will refer to Plaintiff Claudell Conway, Sr., as "Plaintiff" and to the decedent as "Clydell."

attempted to commit suicide on several occasions from July 2016 to January 2017. (*Id.* at 5–6). Specifically, on July 20, 2016, Clydell was found with self-inflicted wounds. (*Id.* at 5). He was later placed on what the complaint characterizes as "extreme watch" for self-inflicted wounds from September 16 to September 17, 2016. (*Id.* at 6). His medical records reflected that he was at risk for self-harm on September 18, 2016. (*Id.*). On October 16, Clydell required sutures for self-harm. (*Id.*). The next day he was placed on "four point extreme watch." (*Id.*). On December 7 and December 9, Clydell was reported having injuries from harming himself. (*Id.*). Treatment notes from December 28 discussed anxiety. (*Id.*). On January 6, 2017, Clydell admitted to engaging in self-harm. (Doc. 5-1 at 6). The next day, he had "[m]ultiple lacerations." (*Id.*). Injuries from self-harm were also reported on January 11 and 12. (*Id.*). On January 17, three days before his death, Clydell suffered a hand injury from punching a wall. (*Id.*).

Plaintiff alleges that the defendants placed or allowed Clydell to be placed "in an area with suicide hazards" despite "his known propensity towards attempted suicide." (Doc. 5-1 at 7). Plaintiff asserts that the defendants were "deliberately indifferent to a known suicide risk of this plaintiff/decedent and were the cause in fact of his death." (*Id.*). Plaintiff alleges that the defendants are liable for:

> a) failing to properly secure the facility;
> b) failing to properly monitor and manage the residents and officers;
> c) failing to maintain a safe area for all residents;
> d) failing to provide proper supervision;
> e) failing to train staff;
> f) failing to keep an adequate watch on this known suicidal inmate;
> g) failing to address known suicide hazards;
> h) allowing Clydell, Jr. to retain such items that could be used for purposes of suicide;
> i) failing to take suicide hazards and suicide risks of Clydell, Jr. seriously;
> j) failing to provide adequate care for Clydell, Jr.;
> k) failing to properly supervise Clydell, Jr.;
> l) failing to properly train employees/staff to recognize suicide behavior;
> m) failing to hire qualified personnel;
> n) failing to properly train employees/staff to prevent suicide;
> o) failing to have in place appropriate guidelines and procedures for suicide prevention; and

p) other acts of deliberate indifference and/or fault to be shown through discovery and at trial.

(*Id.* at 7–8). Plaintiff alleges that "it is contrary to current accepted professional thinking to place a person prone to suicide such as Clydell, Jr. alone in a cell, particularly when suicide hazards and suicide achieving methods as in this case were present." (*Id.* at 8). Instead, it is "far better" to place a person with a known suicide risk "in an open setting where others are around to assist in preventing suicides such as the one that occurred in this case." (*Id.*).

Plaintiff asserts that the "defendants acted to violate Clydell, Jr.'s rights to due process and equal protection of the laws as protected by the Fifth and Fourteenth Amendments of the United States Constitution and 42 USC Section 1983." (Doc. 5-1 at 8). "They did so by establishing and maintaining a system that they knew would result in a lack of appropriate supervision effectively denying protection to inmates such as Clydell, Jr. at risk of harming himself [sic]." (*Id.* at 8–9). The defendants, "individually and collectively, substantially departed from accepted professional judgment, practice and standards, thereby violating Clydell, Jr.'s constitutional and civil rights as an involuntary committee in the car [sic] of the defendants by establishing the above described system." (*Id.* at 9). The "defendants . . . failed to supervise their subordinates to ensure that these subordinates did not ignore patients' acts of suicidal intent and need for regular supervision," including placement in cells posing no suicide hazard. (*Id.*). The named defendants "were aware of the need to supervise their subordinates in order to ensure that they did not violate patients or inmates rights [sic], ignored that need and acted unreasonably, thereby substantially departing from professional judgment." (*Id.*).

Plaintiff alleges that the defendants, "acting individually and together," deprived Clydell of his Constitutional rights to "reasonable and adequate protection from harm, the right to be free from cruel and unusual punishment, and the right to due process and equal protection of the laws."

3

(Doc. 5-1 at 10). The defendants "acted unreasonably, recklessly, maliciously, and substantially departed from standards of professional judgment so as to disregard the constitutional and civil rights and serious risk of harm from suicide to Clydell, Jr." (*Id.*). Plaintiff sues individually and on behalf of Clydell "to recover survival damages for the pain and suffering incurred by Clydell, Jr. prior to his death." (*Id.*). He also "seeks recovery for loss of love and affection and all other general damages that may be reasonable under Louisiana law." (*Id.* at 11).

## II. STANDARDS OF REVIEW

### A. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) is analyzed similarly to a motion under Rule 12(b)(6), as the Court accepts "well-pled factual allegations . . . as true and view[s] them in the light most favorable to the plaintiff." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). Under Rule 12(b)(1), the Court may consider: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). The Court must dismiss the case if it determines it does not have subject matter jurisdiction, and the party asserting jurisdiction bears the burden of demonstrating its existence. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011).

### B. Rule 12(b)(6)

In ruling on a motion to dismiss under to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). To defeat a motion to dismiss, a complaint must contain "enough facts to state a claim

to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are not sufficient. *Iqbal*, 556 U.S. at 678.

### III. DISCUSSION

The complaint does not clearly delineate each of Plaintiff's claims, differentiate between each Defendant's conduct, distinguish between official- and individual-capacity claims, nor separate each count into its own cause of action. Thus, the complaint violates the pleading standards established by Rules 8 and 10 of the Federal Rules of Civil Procedure,[2] and tasks both the defendants and the Court with sorting through an amalgamation of potential claims "interwoven in a haphazard fashion." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985)). In *Weiland*, the Eleventh Circuit identified four types of "shotgun pleadings"—imprecise complaints that fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

The complaint here commits at least two shotgun pleading "sins"—failing to separate into different counts each cause of action and "asserting multiple claims against multiple defendants

---

[2] Rule 8 provides, among other things, that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 requires a complaint to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

5

without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* Nevertheless, based on the facts alleged and the named defendants, the Court construes the complaint as challenging the conditions of Clydell's confinement under the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, which includes claims against the individual defendants in both their official and individual capacities.[3] The Court also construes the complaint as containing state-law negligence and wrongful death claims. For the following reasons, all such claims are subject to dismissal.

### A. Official-Capacity Claims

"Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation marks omitted). Official-capacity suits are, therefore, "treated as a suit against the entity" itself. *Id.* at 166; *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). As Plaintiff has filed suit directly against the State and DPSC, his official-capacity claims against Vannoy and LeBlanc are duplicative and subject to dismissal. *See, e.g.*, *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (district court correctly dismissed claims against municipal officers which "duplicate[d] claims against the respective governmental entities themselves"); *Broussard v. Lafayette City-Parish Consol. Gov't*, 45 F. Supp. 3d 553, 571 (W.D. La. 2014) ("When . . . the government entity itself is a defendant in the litigation, claims against specific individuals in their official capacities are redundant, and for that reason, courts in this circuit have found it is appropriate to dismiss them.").

---

[3] As the Court stated, Plaintiff does not specify whether he sues the individual defendants in their official capacities, though he does make one stray reference to the defendants' individual capacity. (*See* Doc. 5-1 at 9). However, based on the nature of the allegations, the Court presumes that Plaintiff asserts both individual- and official-capacity claims.

**B.     Sovereign Immunity**

The State and DPSC argue that they are entitled to sovereign immunity under the Eleventh Amendment against all of Plaintiff's claims. (*See* Doc. 16-1 at 5–8).  In response, Plaintiff curiously launches into a discussion concerning the merits of his claims, without providing any legal basis against the defendants' claim to immunity. (*See* Doc. 20 at 2–5).  In fact, it appears that Plaintiff confuses the defendants' claim to *sovereign immunity*—a jurisdictional inquiry—with the doctrine of *qualified immunity*, a merits-based issue.  In any event, the Court concludes that the State and DPSC are entitled to sovereign immunity for all claims asserted directly against them.

Under the Eleventh Amendment to the United States Constitution, states are immune from suit in federal court by a citizen. U.S. Const. amend. XI; *see also Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002).  Sovereign immunity acts to deprive "federal courts of the power to adjudicate suits against a state." *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011).  The immunity is not absolute, however, and may be waived by the states. *Id.* States waive their right to immunity by "voluntarily consenting to suit," which occurs when a state "voluntarily invokes" federal jurisdiction or "makes a clear declaration that it intends to submit to federal jurisdiction."[4] *Id.* (internal quotation marks omitted).  Congress may also abrogate a state's immunity to enforce the provisions of the Fourteenth Amendment. *Id.*

Here, both the State itself and DPSC, as a state agency, are entitled to sovereign immunity unless an exception applies. *See, e.g.*, *Richardson v. S. Univ.*, 118 F.3d 450, 452 (5th Cir. 1997) ("[A] plaintiff cannot avoid the sovereign immunity bar by suing a state agency or an arm of the State rather than the State itself.").  First, it is clear that Louisiana has not generally consented to

---

[4] For example, a state waives its sovereign immunity by filing suit in federal court or removing a case to federal court. *E.g.*, *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619–20 (2002).  Here, neither the State nor DPSC has "invoked" federal jurisdiction by either filing suit or removing the lawsuit to this Court.

7

suit in federal court. *Raj v. La. State Univ.*, 714 F.3d 322, 329 (5th Cir. 2013). And Plaintiff does not point to any specific waiver of this immunity by the defendants in this case, nor is the Court aware of any. Accordingly, the Court grants their motion to dismiss on sovereign immunity grounds and dismisses all claims against the State and DPSC without prejudice. Further, because Plaintiff's state-law claims against the individual defendants constitute claims "that state officials violated state law in carrying out their official responsibilities," those claims are akin to Plaintiff's claims against the State itself under La. R.S. § 13:5108.1, which indemnifies state agents for conduct while "engaged in the performance of duties of the individual's office." Accordingly, these claims are subject to dismissal under the Eleventh Amendment.[5] *Hughes v. Savell*, 902 F.2d 376, 379 (5th Cir. 1990); *see also Guillory v. La. Dep't of Health and Hosps.*, No. 16-787-JWD-RLB, 2018 WL 1404277, at *20 (M.D. La. Mar. 20, 2018).[6]

**B.     Failure to State a Claim**

The only remaining claims are the § 1983 claims against the individual defendants in their individual capacities. These claims, too, fail to state a claim upon which relief can be granted for Plaintiff's failure to plead any facts which could subject either Vannoy or LeBlanc to liability on a personal basis.

"A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Hinojosa*

---

[5] The phrase "Eleventh Amendment immunity" has been described by the Supreme Court as "convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). Instead, "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." *Id.*

[6] Nevertheless, as the Court discusses *infra* with respect to Plaintiff's individual-capacity federal claims, his individual-capacity state claims against Vannoy and LeBlanc would be dismissed for failure to state a claim for the lack of any specific allegations regarding acts or omissions by either Vannoy or LeBlanc that could plausibly subject them to liability on an individual basis.

*v. Livingston*, 807 F.3d 657, 669 (5th Cir. 2015) (quoting *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011)). An official's conduct violates clearly established law where, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). However, "[a]n official that violates a constitutional right is still entitled to qualified immunity if his or her actions were objectively reasonable." *Perniciaro v. Lea*, 901 F.3d 241, 255 (5th Cir. 2018).

A supervisory official may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter*, 659 F.3d at 446 (quoting *Gates v. Texas Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Id.* (quoting *Gates*, 537 F.3d at 435).

1. **Personal Participation**

"The Supreme Court has held that 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)) (internal quotation marks omitted). The Eighth Amendment provides inmates the right to "basic human needs, including medical care and protection from harm." *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996). To be deliberately indifferent to an inmate's needs, "the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Breenan*, 511 U.S. 825, 837 (1994). Nevertheless, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Moreover, while "the law is clearly established that jailers must take measures to prevent inmate suicides once they know of the suicide risk, we cannot say that the law is established with any clarity as to what those measures must be." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 328–29 (5th Cir. 1998) (internal quotation marks omitted). It is clear, however, that mere negligence does not rise to the level of deliberate indifference. *Hyatt*, 843 F.3d at 178. Nor does unsuccessful treatment, medical malpractice, or disagreement with treatment, "absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

As should be apparent by this point in the Ruling, there are no allegations in the complaint that either Vannoy or LeBlanc personally participated in the events leading to Clydell's death by, for example, having personal knowledge that Clydell had a suicidal ideation and failing to take any measures to mitigate the risk of harm. There are also, of course, no allegations that Vannoy or LeBlanc were in any way personally responsible for (or had any specific awareness of) Clydell's supervision and treatment. Indeed, the allegations of the complaint taken as a whole can be characterized as pursuing liability against Vannoy and LeBlanc on a purely supervisory basis due to their positions as Warden of LSP and Secretary of DPSC, respectively. (*See* Doc. 16-1 at 7–8 (listing "failing to provide proper supervision," "failing to train staff," "failing to hire qualified personnel," "failing to properly train employees/staff to prevent suicide," and "failing to have in place appropriate guidelines and procedures for suicide prevention" as bases for liability)). Moreover, referring to the Defendants collectively prevents the Court from drawing the inference

that either Vannoy or LeBlanc personally acted with subjective deliberate indifference. *See Sanchez*, 866 F.3d 274, 281 (5th Cir. 2017) ("Supervisors cannot be held liable for constitutional violations committed within the jail if they had no personal involvement."); *Hinojosa*, 807 F.3d at 684 (factual allegations "lumping [all Defendants] together" should be disregarded where it cannot be clearly inferred which specific acts each defendant is allegedly responsible for).

Further, Plaintiff fails to allege the existence of or identify any specific unconstitutional policy at LSP enacted by either Vannoy or LeBlanc that causally resulted in Clydell's death. Instead Plaintiff asserts that the placement of Clydell alone in a cell was "contrary to current accepted professional thinking," and that it would be "far better and more accepted" to place Clydell "in an open setting where others are around to assist in preventing suicides." (Doc. 5-1 at 8). But the case law is clear that "[d]isagreements regarding the proper course of treatment or the failure to provide optimal care are insufficient" to show deliberate indifference. *Perniciaro*, 901 F.3d at 258. Accordingly, Plaintiff's disagreement with the care provided to Clydell, which is not explained further in the complaint, does not plausibly support a § 1983 claim.

    **2.      Failure to Train or Supervise**

"A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992). "A supervisor may also be liable for failure to supervise or train if: '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Porter*, 659 F.3d at 446 (quoting *Goodman v. Harris Cnty.,* 571 F.3d 388, 395 (5th Cir. 2009)). "[P]roof of deliberate indifference generally requires a showing of more than a single instance of the lack of

11

training or supervision causing a violation of constitutional rights." *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (quoting *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)).

In the context of failure-to-supervise claims, the Fifth Circuit has said: "'for a supervisor to be liable . . . , the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform.'" *Goodman*, 571 F.3d at 395 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir.2005)). "Moreover, 'for liability to attach based on an "inadequate training" claim, a plaintiff must allege with specificity how a particular training program is defective.'" *Id.* (quoting *Roberts*, 397 F.3d at 293) (dismissing failure to supervise and failure to train claims together); *see also Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (to satisfy deliberate indifference element of failure-to-train claim, a plaintiff must usually demonstrate a "pattern of violations" and that inadequate training is "obvious and obviously likely to result in a constitutional violation"); *Floyd v. City of Kenner*, 351 F. App'x 890, 898 (5th Cir. 2009) ("[T]he pleadings must have sufficient precision and factual detail to reveal that more than guesswork is behind the allegation.").

The complaint is completely devoid of facts stating a plausible § 1983 claim for failure to train or supervise. Plaintiff has not identified any specific need for training or supervision, such as a past history of suicides at LSP or other constitutional violations by corrections officers which would have put Vannoy and LeBlanc on notice of a need for training or supervision in a particular area. And he has failed to allege any specific facts regarding the adequacy of the training program at LSP and how, specifically, it is deficient in training officers to prevent inmate suicides. Instead, the complaint generically alleges that all of the defendants knew of Clydell's heightened risk of suicide and failed to prevent it. Plaintiff's legal conclusions that all of the individual Defendants, collectively, acted "with deliberate indifference" for Clydell's medical needs by failing to

12

"properly supervise" him, failing to provide "adequate care," and failing to "take suicide hazards and suicide risks . . . seriously" are supported by no underlying factual specificity and, therefore, entitled to no deference. *See Iqbal*, 556 U.S. at 679 (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to the presumption of truth). Indeed, generic allegations of a substantial risk of harm and knowledge of that risk that "merely track the elements of a deliberate indifference claim . . . do not alone suffice to allege an Eighth Amendment violation." *Hinojosa*, 807 F.3d at 685.

Plaintiff attempts to sidestep these shortcomings and clear pleading deficiencies by asking the Court to "allow discovery to commence and be completed" before "revisit[ing] any motion to dismiss any named defendant for a failure to state a claim against said defendant." (Doc. 20 at 5). But Plaintiff misunderstands the purpose of a motion to dismiss under Rule 12(b)(6), which challenges only the sufficiency of the allegations in the complaint. Indeed, the Supreme Court is clear that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Plaintiff's complaint contains no actual facts from which the Court can infer a plausible § 1983 claim against either Vannoy or LeBlanc. Accordingly, the individual-capacity § 1983 claims are dismissed.

### 3. Leave to Amend

Despite the significant deficiencies outlined above, courts are encouraged to grant leave to amend the complaint once to cure such deficiencies before dismissing a lawsuit with prejudice. *See Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) ("Although a court may dismiss [a deficient] claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated

opportunities to do so."). Accordingly, the Court dismisses Plaintiff's claims without prejudice and grants him leave to amend the complaint.

## IV.  CONCLUSION

Accordingly, for the foregoing reasons, **IT IS ORDERED** that the Motion to Dismiss (Docs. 16) is **GRANTED**, and all claims asserted by Plaintiff Claudell Conway, Sr. in this lawsuit are **DISMISSED WITHOUT PREJUDICE**.  **IT IS FURTHER ORDERED** that, to the extent Plaintiff wishes to cure the deficiencies described above, he shall file an amended complaint **on or before April 19, 2019**.  Plaintiff is cautioned that failure to amend the complaint or to cure the above-mentioned deficiencies will result in the dismissal of his lawsuit with prejudice.

Signed in Baton Rouge, Louisiana, on <u>March 22, 2019</u>.

**JUDGE JOHN W. deGRAVELLES
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**