# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**CLAUDELL CONWAY, SR.**

                                              **CIVIL ACTION**

**VERSUS**

                                           **NO. 18-33-JWD-EWD**

**DARREL VANNOY, ET AL.**

## RULING AND ORDER

This matter comes before the Court on the *Motion to Dismiss* (Doc. 33) filed by defendants, the State of Louisiana (the "State") through the Department of Public Safety & Corrections (the "DPSC"), Secretary James LeBlanc ("LeBlanc"), and Warden Darrel Vannoy ("Vannoy") (collectively, "Defendants"). Plaintiff Claudell Conway, Sr., a.k.a, Clydell Conway, Sr., individually and on behalf of his deceased son Clydell Conway, Jr., ("Plaintiff") opposes the motion. (Doc. 38.) Defendants have filed a reply. (Doc. 41.) Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' motion is granted in part and denied in part.

## I.    Relevant Factual Background

### A.  Introduction

The following facts are taken from Plaintiff's *Amended Petition for Wrongful Death and Survivor Claim* ("*Amended Petition*") (Doc. 28). They are assumed to be true for purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014).

Plaintiff in this action is Claudell Conway, Sr. (*Am. Pet.* ¶ 1, Doc. 28.) Plaintiff is the biological father and "closest living relative" to Clydell Conway, Jr. ("Decedent"), who died on January 20, 2017. (*Id.*) At all relevant times, Decedent was incarcerated at LSP, including from

2016 through the date of his death. (*Id.* ¶¶ 4, 11, 13, 16.) Decedent purportedly had a disability under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"). (*Id.* ¶ 13.)

Defendants in this action are the State; DPSC Louisiana State Penitentiary ("LSP"), "on information and belief[,] a division of the State"; LeBlanc; Vannoy; "Dr. (FNU) Helms," the "[t]reating physician of [D]ecedent"; "UNKNOWN SECURITY STAFF EMPLOYEES" of LSP; and the Office of Risk Management, the alleged insurer of all Defendants. (*Id.* ¶ 3.) This motion, however, is brought only by the State, DPSC, LeBlanc, and Vannoy.

Plaintiff alleges that LeBlanc is the Secretary of DPSC and is "ultimately responsible for the control, oversite, and functioning of all programs within" this department, including LSP. (*Am. Pet.* ¶ 7, Doc. 28.) "He formulates, directs, and maintains all regulations of the [DPSC], and determines the policies regarding management, personnel, and total operations. This includes ultimate determination of facilities and conditions in which the [DPSC] houses people with mental illness." (*Id.*) According to Plaintiff, "LeBlanc is the final policymaker with regard to the conditions at the prison. He has implemented or supported the implementation of the policies that cause harm to this Plaintiff, and has failed to implement additional policies that would prevent harm to the Plaintiff." (*Id.*) LeBlanc was allegedly acting "in his official capacity." (*Id.*)

Vannoy is Warden of LSP and was the Warden at the time of Decedent's death. (*Am. Pet.* ¶¶ 8, 15, Doc. 28.) Vannoy "is responsible for control over LSP AND makes final staffing, budget, and administrative decisions that are not otherwise made by Defendant LeBlanc." (*Id.* ¶ 8.) The *Amended Petition* alleges:

> [Vannoy] is responsible for the safety and care of all persons held at LSP and is responsible for protecting and implementing prisoners' statutory and constitutional rights. He oversees disciplinary actions and decisions, housing decisions, and the supervision of and care for people with serious mental illness. He personally sets and implements policies that cause the onset of mental illness, mental decompensation, and harm to this Plaintiff.

(*Id.*).  Vannoy "is sued in his official capacity." (*Id.*)

Defendant Helms was Decedent's treating physician. (*Id.* ¶ 9.)  Helms purportedly "failed to adequately treat and care for Plaintiff" and is "sued in his official capacity." (*Id.*)

DPSC "is the administrative arm of the State . . . responsible for administering the State's correctional facilities including LSP where Plaintiff was incarcerated." (*Am. Pet.*¶ 10, Doc. 28.) DPSC "is sued pursuant to [the] ADA and Section 504 of the [RA] only." (*Id.*)

### B.  Decedent's Death

Plaintiff alleges, "on information and belief," that Decedent's "incarceration, medical and mental health history were well known to those employed at" LSP. (*Id.* ¶ 16.)  Decedent himself was "well known" to LSP's "staff", and "mental health records were maintained on [him] on his arrival and stay at" LSP (*Id.*¶ 17.)

According to Plaintiff, Defendant Helms, who was hired by the State, LeBlanc, and Vannoy, "deliberately prescribed a medication **WELLBUTRIN** to [Decedent,] who had evidenced suicidal actions." (*Id.* (emphasis omitted).)  Plaintiff claims this medication had a "known side effect to heighten the risk of suicide in the patients who have expressed suicidal actions." (*Id.* (emphasis omitted).)  Plaintiff asserts that Defendants "knew of the prior suicidal actions of the [Decedent]" and, despite this, the State, DPSC, LeBlanc, and Vannoy "hired, authorized and utilized a treating physician[] with want of skills who prescribed a medication to a known suicidal patient, when said prescribed medication is known to increase the risk of suicide in a patient who has previously expressed suicidal actions." (*Id.* (emphasis omitted).)

Plaintiff claims that it is "well known to those at" LSP that Decedent had "attempted and/or threaten to commit suicide on MORE THAN ONE prior occasions", including several specific

dates that culminated in his death by suicide on January 20, 2017. (*Am. Pet.*¶ 18, Doc. 28.) Plaintiff

points to the following specific instances:

A. Self inflicted wounds on July 20, 2016.

B. Assessment for need for four point restraints August 12, 2016.

C. Decedent on EXTREME WATCH for self inflicted wounds September 16, 17, 2016.

D. Self harm risk noted in records on September 18, 2016.

E. Suture surgery needed for self mutilation on October 16, 2016.

F. Four point EXTREME WATCH noted on October 17, 2016.

G. Self mutilation noted December 7, 2016.

H. Self inflicted cuts noted December 9, 2016.

I. Medical notes discuss plaintiff's anxiety December 28, 2016.

J. Decedent found on the floor of cell having fallen asleep praying. December 30, 2016.

K. Decedent admits to cutting himself on January 6, 2017.

L. Multiple lacerations noted January 7, 2017.

M. Self inflicted cuts noted on January 11, 2017 and January 12, 2017.

N. Decedent has a hand injury from punching a wall on January 17, 2017.

(*Id.* ¶ 18.) Plaintiff emphasizes that there were other specific instances of self-inflicted injuries in

the medical records from earlier dates. (*Id.*)

On or about January 20, 2017, LSP employees found that Decedent had hanged himself in

his jailcell. (*Id.* ¶ 19.) He was pronounced dead the same day, though no specific time of death

was noted. (*Id.* ¶ 20.)

### C. Plaintiff's Claims Against the Defendants

Plaintiff claims that all of the Defendants "are liable for breach of the suicide prevention policy, failing to follow the appropriate standard of professional care in dealing with" Decedent, when he had mental health issues requiring medication, when he had "previously documented suicidal actions," when he was allowed to be placed "in an area where suicide hazards exist or suicide could be accomplished," when they didn't consider "his known propensity towards attempted suicide," when they had "sufficient knowledge of the Suicide Risk" and that Decedent "was being treated for a serious medical condition," and when they "failed to instruct subordinate employees to take the proper steps to protect this suicidal inmate." (*Am. Pet.* ¶ 21, Doc. 28.) With respect to LeBlanc and Vannoy, they allegedly failed to "properly implement a valid suicide prevention policy, which would prevent and protect this [Decedent] from the injuries that lead to his death." (*Id.*) Plaintiff claims that LeBlanc, Vannoy, Helms, LSP, DPSC, and "defendant staff personnel" were "acutely aware" of the suicide risk and "knew of the danger of placing a person such as" Decedent into a cell with "hanging hazards and knowing this suicide risk, mental health issues and potential for suicidal actions" but all "ignored all the documented evidence of his potential for suicide," put him into a cell with "hanging hazards," and failed to monitor him sufficiently. (*Id.* ¶ 22.)

Plaintiff claims that all these Defendants were deliberately indifferent to Decedent's known suicide risk and caused his death. (*Id.* ¶ 23.) Plaintiff lists a number of specific ways in which LeBlanc and Vannoy were deliberately indifferent, including failing to property monitor the facility for security hazards and monitor residents, failing to implement a valid suicide prevention policy, failing to properly supervise, and failing to train. (*Id.* ¶ 24.)

Plaintiff also alleges that these Defendants acted "contrary to current accepted professional thinking to place a person prone to suicide such as [Decedent] alone in a cell, particularly when suicide hazards and suicide achieving methods as in this case were present." (*Am. Pet.* ¶ 25, Doc. 28.) Plaintiff maintains that the "far better and more accepted" practice is to put someone like Decedent "in an open setting where others are around to assist in preventing suicides" like the one alleged here. (*Id.*)

Plaintiff asserts a number of causes of action. Specifically, Defendants violated Decedent's Fifth and Fourteenth Amendment rights to due process and equal protection by "establishing and maintaining a system that they knew would result in a lack of appropriate supervision effectively denying protection to inmates like [Decedent] at risk of harming himself." (*Id.* ¶ 25(A).) Defendants also "substantially departed from accepted professional judgment, practice and standards, thereby violating [Decedent's] constitutional and civil rights[.]" (*Id.* ¶ 25(B).) Plaintiff claims that Vannoy, in his individual capacity, "failed to supervise [his] subordinates to ensure that [they] did not ignore patients' acts of suicidal intent and need for regular supervision[.]" (*Id.* ¶ 25(C).) Further, LeBlanc, Vannoy, Helms, and "the prison guards" knew of the need to supervise subordinates to protect suicidal patients but "ignored that need and acted unreasonably, thereby substantially departing from professional judgment" and violating Decedent's rights. (*Id.* ¶ 25(D).) These defendants also allegedly "conspired to engage in a course of conduct that acted to deprive [Decedent] of his constitutional rights and did deprive him of said rights," specifically those against cruel and unusual punishment and for due process and equal protection. (*Id.* ¶ 25(E).) These Defendants also purportedly had a duty to intervene but failed to do so. (*Id.* ¶ 25(F).) Plaintiff asserts certain state law claims, including survival damages, loss of consortium, and negligence. (*Id.* ¶¶ 26–29.) Lastly, Plaintiff pleads that DPSC and the State "were deliberately indifferent to

the needs of [D]ecedent in that they failed to train staff or provide adequate staffing when it was known that suicides were threatened/attempted, failed to correct known suicide hazards and to use precautions such as observation or cameras or other preventive measures." (*Id.* ¶ 33.)

### D. Procedural History

Plaintiff filed his original complaint on January 17, 2018. (Doc. 1.) On March 29, 2018, Defendants DPSC, LeBlanc, and Vannoy filed a motion to dismiss for failure to state a claim. (Doc. 16.) On March 22, 2019, this Court granted the motion in full, dismissing all claims without prejudice but allowing leave to amend. (Doc. 26.) On April 4, 2019, Plaintiff filed the *Amended Petition*. (Doc. 28.) On April 23, 2019, Defendants filed the instant motion. (Doc. 33.)

## II. Relevant Standards

### A. Rule 12(b)(1)

Concerning the standard for Rule 12(b)(1) motions, the Fifth Circuit has explained:

Motions filed under Rule 12(b)(1) . . . allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States,* 899 F. Supp. 305, 307 (E.D. Tex. 1995). Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir. 1980).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). . . .

In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute. *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot

prove any set of facts in support of his claim that would entitle plaintiff to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.,* 143 F.3d 1006, 1010 (5th Cir. 1998).

*Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

## B. Rule 12(b)(6)

In *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014), the Supreme Court explained:

"Federal pleading rules call for 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2); they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson*, 135 S. Ct. at 346–47 (citation omitted).

Interpreting Rule 8(a) of the Federal Rules of Civil Procedure, the Fifth Circuit has explained:

> The complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of a claim] *does not impose a probability requirement* at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."

*Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965 (2007)).

Applying the above case law, the Western District of Louisiana has stated:

> Therefore, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)]; *Twombly*, 55[0] U.S. at 556. This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Fed. R. Civ. P. 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds

8

upon which it is based. The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under a particular theory of law provided that there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257; *Twombly*, 55[0] U.S. at 556.

*Diamond Servs. Corp. v. Oceanografia, S.A. De C.V.*, No. 10-00177, 2011 WL 938785, at *3 (W.D. La. Feb. 9, 2011) (citation omitted).

The Fifth Circuit further explained that all well-pleaded facts are taken as true and viewed in the light most favorable to the plaintiff. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502–03 (5th Cir. 2014). The task of the Court is not to decide if the plaintiff will eventually be successful, but to determine if a "legally cognizable claim" has been asserted." *Id.* at 503.

## III. Discussion

### A. Sovereign Immunity

#### 1. Parties' Arguments

Defendants first argue that the following claims are barred by the Eleventh Amendment: (1) Plaintiff's § 1983 claims against the State through DPSC, and (2) Plaintiff's state law claims. As to the first, Defendants maintain that Plaintiff ignored the Court's ruling on the last motion to dismiss and have again asserted claims against the State and DPSC, which is an arm of the State for Eleventh Amendment purposes. The Court has already ruled that these Defendants are entitled to sovereign immunity, and nothing has changed about that fact. As to the Louisiana law claims against the State, these too are barred by the Eleventh Amendment and state law. Further, the § 1983 claims against Vannoy and LeBlanc in their official capacity should also be dismissed, as these are, in effect, duplicative claims against the State. Again, nothing has changed from the last ruling. Finally, as to the state law claims against Vannoy and LeBlanc, Plaintiff has asserted a

negligence claim, but these claims too are barred by the Eleventh Amendment; the Court recognized this in a prior ruling in this case, and it should do so again here.

Plaintiff first argues that he has been denied the benefit of discovery. Plaintiff also points to another pending lawsuit, *Lewis v. Cain*, No. 15-318, which sets forth considerable allegations about the inadequacies of a number of correctional facilities, including LSP. Plaintiff claims that this is a civil rights case and that "this court is the appropriate venue to bring litigation." (Doc. 38 at 4.) Plaintiff responds to the Eleventh Amendment immunity argument with a discussion on qualified immunity. He again hammers the facts, Decedent's death, and the "abysmal human rights track record" at LSP. As to the state law claims against the State, Plaintiff asserts:

> State claims made against Louisiana are under the context of §1983 and the related ADA/RA claims. They are made to show context to the circumstances surrounding the death. Any potential state claims that arise out of this case may be heard here as they touch and concern the underlying federal question.

(Doc. 38 at 5.) With respect to the official capacity claims, Plaintiff argues the merits of why he has stated a viable *Monell* claim against these Defendants.

Defendants respond that Plaintiff is only entitled to jurisdictional discovery if he can "'demonstrate the requisite jurisdiction facts sufficient to constitute a basis for jurisdiction' and not when "discovery would be futile." (Doc. 41 at 1–2 (citation omitted).) No jurisdictional discovery is allowed if Plaintiff is "not likely to produce the facts needed to withstand a Rule 12(b)(1) motion." (Doc. 41 at 2 (citation omitted).) Here, Plaintiff has not identified what specific facts he needs or what he expects to discover that would helped demonstrate subject matter jurisdiction. Further, the *Lewis v. Cain* complaint attached to Plaintiff's opposition is irrelevant, as these are just factual allegations. Lastly, discovery was allowed between March 29, 2018, and March 22, 2019, and nothing stopped Plaintiff from engaging in discovery during that time.

## 2. Applicable Law

Under the Eleventh Amendment, states are immune from suit in federal court by a citizen. U.S. Const. amend. XI; *see also Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 122 S. Ct. 1640, 1642, 152 L. Ed. 2d 806 (2002). Sovereign immunity acts to deprive "federal courts of the power to adjudicate suits against a state." *Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011).[1]

Further, "[t]he Eleventh Amendment bars claims against a state brought pursuant to 42 U.S.C. § 1983." *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citing *Farias v. Bexar Cty. Bd. of Trustees for Mental Health Mental Retardation Servs.*, 925 F.2d 866, 875 n. 9 (5th Cir. 1991)). "Section 1983 does not waive the states' sovereign immunity[.]" *Id.* (citing *Quern v. Jordan*, 440 U.S. 332, 338 n. 7, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979)).

Similarly, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471, 105 S. Ct. 873, 877, 83 L. Ed. 2d 878 (1985)). "As such, it is no different from a suit against the State itself." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S. Ct. 3099, 3104–3105, 87 L.Ed.2d 114 (1985); *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2035 n.55, 56 L.Ed.2d 611 (1978)). Thus, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.*

---

[1] As stated in the Court's last ruling, the phrase "Eleventh Amendment immunity" has been described by the Supreme Court as "convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999). Instead, "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today." *Id.*

However, Eleventh Amendment immunity is not absolute and may be waived by the states. *Union Pac.*, 662 F.3d at 340. States waive their right to immunity by "voluntarily consenting to suit," which occurs when a state "voluntarily invokes" federal jurisdiction or "makes a clear declaration that it intends to submit to federal jurisdiction."[2] *Id.* (internal quotation marks omitted). Congress may also abrogate a state's immunity to enforce the provisions of the Fourteenth Amendment. *Id.* Louisiana has not generally consented to suit in federal court. *Raj v. La. State Univ.*, 714 F.3d 322, 329 (5th Cir. 2013).

Lastly, La. Rev. Stat. Ann. § 13:5108.1 provides that the "[S]tate shall defend and indemnify a covered individual," like a state employee, "against any claim . . . filed in any court over alleged negligence or other act by the individual . . . when the act that forms the basis of the cause of action took place while the individual was engaged in the performance of the duties of the individual's office [or] employment with the state[.]" In the Court's prior ruling, the Court stated:

> because Plaintiff's state-law claims against the individual defendants constitute claims "that state officials violated state law in carrying out their official responsibilities," those claims are akin to Plaintiff's claims against the State itself under La. R.S. § 13:5108.1, which indemnifies state agents for conduct while "engaged in the performance of duties of the individual's office." Accordingly, these claims are subject to dismissal under the Eleventh Amendment. *Hughes v. Savell*, 902 F.2d 376, 379 (5th Cir. 1990); *see also Guillory v. La. Dep't of Health and Hosps.*, No. 16-787-JWD-RLB, 2018 WL 1404277, at *20 (M.D. La. Mar. 20, 2018).

(Doc. 26 at 8.)

Since this ruling, however, another section of this Court explained that "the United States Supreme Court's opinion in *Lewis v. Clarke* casts doubt on . . . holdings" like *Guillory* and the

---

[2] For example, a state waives its sovereign immunity by filing suit in federal court or removing a case to federal court. *E.g.*, *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619–20 (2002). Here, neither the State nor DPSC has "invoked" federal jurisdiction by either filing suit or removing the lawsuit to this Court.

cases it relies upon. *See Deal v. Dep't of Corr.*, No. 16-61, 2018 WL 4935454, at *4 (M.D. La. Oct. 11, 2018) (Jackson, J.) (citing *Lewis v. Clarke*, ––– U.S. –––, 137 S. Ct. 1285, 197 L.Ed.2d 631 (2017)). In *Deal*, the Court explained:

> At issue in *Lewis* was whether tribal sovereign immunity barred an individual-capacity negligence suit against a tribal employee for damage arising from a car accident that occurred in the scope of his tribal employment. *Id.* The Court held that it did not. *Id.* In so holding, the Court rejected the tribal employee's argument that the tribe was the "real party in interest" because the tribe would have a statutory obligation to indemnify the tribal employee from any liability. *Id.* at 1292. Indemnity obligations, the Court explained, "cannot, as a matter of law, extend sovereign immunity to individual employees who would otherwise not fall under its protective cloak." *Id.* And the Court emphasized that the "critical inquiry" is "who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab." *Id.* at 1292-1293.
>
> Applied here, *Lewis* instructs that Defendants cannot claim Eleventh Amendment immunity through Louisiana Revised Statutes § 13:5108.1 and its requirement that the State of Louisiana indemnify Defendants from any liability to Plaintiff. *Lewis*, 137 S. Ct. 1294 ("[I]ndemnification provisions do not alter the real-party-in-interest analysis for purposes of sovereign immunity[.]"). So the Eleventh Amendment poses no jurisdictional bar to Plaintiff's state-law individual-capacity claims, and the Court turns to the merits of them.

*Deal*, 2018 WL 4935454, at *4.

### 3. Analysis

Having carefully considered the matter, the Court concludes that the motion should be granted in part and denied in part. It's very clear from the above case law that (1) the Eleventh Amendment bars Plaintiff's claims under § 1983 and Louisiana law against the State and DPSC; and (2) under *Will*, the Eleventh Amendment bars Plaintiff's claims against LeBlanc and Vannoy in their official capacities. No amount of discovery will cure any of these deficiencies, as the case law on these issues is well established and not fact-dependent. Accordingly, each of these claims is dismissed.

However, the Court finds *Deal*'s interpretation of *Lewis* persuasive. "[T]he 'critical inquiry' " [under *Lewis*] is " 'who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab.' " *Deal*, 2018 WL 4935454, at *4 (quoting *Lewis*, 137 S. Ct. 1292–93). As a result, Louisiana's indemnification statute does not make LeBlanc and Vannoy immune from state law claims in federal court, so the Court will deny Defendant's motion in this respect.

## B. Section 1983 Claims Against LeBlanc and Vannoy in their Individual Capacities

### 1. Parties' Arguments

With respect to Vannoy, Defendants argue that there is no allegation that Vannoy was personally involved in the events leading to Decedent's death. There is no allegation that Vannoy had any personal knowledge about Decedent's suicidal ideations, that Vannoy personally failed to monitor him, or that Vannoy personally ordered him to the area where he died. Thus, Plaintiff cannot establish deliberate indifference. Vannoy cannot be vicariously liable for what happened. While Plaintiff lists a number of ways Vannoy failed Decedent, he doesn't identify any policies and fails to allege that Vannoy "actually knew that the polices and procedures at LSP would result in harm to [Decedent], or his death." (Doc. 33-1 at 15.) Further, while Plaintiff asserts that there were better practices, the key question is whether there were unconstitutional policies. Lastly, failure to train and supervise claims typically require more than a single instance, and Plaintiff fails to provide other examples.

With respect to LeBlanc, Defendants argue that Plaintiff makes only conclusory allegations of his involvement. Defendants then largely repeat many of the arguments on this issue, applying the Vannoy analysis to LeBlanc.

Lastly, Defendants argue that Plaintiff fails to allege a viable conspiracy claim. Plaintiff "only raises the specter of a conspiracy through conclusory allegations." (Doc. 33-1 at 22.)

14

Plaintiff did not improve in any meaningful way upon the allegations of the prior complaint, which this Court deemed inadequate. The same result is warranted here.

Plaintiff responds that Vannoy and LeBlanc are liable as supervisors and under the theory of bystander liability. Plaintiff provides little detail beyond this in the individual capacity section, but, in the official capacity section, Plaintiff argues that LeBlanc "knew or should have known of the deplorable conditions found throughout the various institutions within Louisiana, specifically" LSP, and he should have known of the high death rates and prisoner maltreatment. (Doc. 38 at 7.) Plaintiff points to *Lewis v. Cain* as evidence of a pattern and "examples of systematic mistreatment of prisoners with disabilities[.]" (Doc. 38 at 7.) Warden Vannoy was "responsible for implementing the directives of [DPSC] as well as directly controlling the policies of" LSP. (Doc. 38 at 8.) Plaintiff argues, on "information and belief," that "the warden restricted access to medical treatment, fostered a callous disregard for the safety and wellbeing of the prisoners, and routinely [took] affirmative steps to prevent the public from knowing the how (sic) poorly the prison is actually run." (Doc. 38 at 8.)

Plaintiff also asserts a conspiracy claim against Vannoy and LeBlanc, arguing that LSP has "a horrible track record on human rights" and, on information and belief, this is "directly attributed to polices that are formulated at the highest level." (Doc. 38 at 12.) LeBlanc knows of the prison conditions in the facilities he oversees and knows of the constitutional violations but does nothing. Plaintiff argues that Vannoy and LeBlanc "created a policy to restrict access to medical treatment," "hired the wrong people, failed to properly train his employees," and "implemented polices that he knew or should have known violated prisoner's rights." (Doc. 38 at 13.)

Defendants respond that the *Amended Complaint* only alleges in a conclusory way that LeBlanc and Vannoy had any personal knowledge of Decedent's suicidal tendencies. "Indeed,

there are no allegations . . . to indicate that Defendants LeBlanc or Vannoy were part of any treatment team, were responsible for the direct care of Mr. Conway, or even that they were informed of any issues surrounding [Decedent's] care or treatment." (Doc. 41 at 4.) Plaintiff's deliberate indifference claim fails as a matter of law, as these Defendants lack the requisite knowledge. Again, these Defendants cannot be vicariously liable. Moreover, Plaintiff fails to state a viable claim for bystander liability. Further, Plaintiff must allege more than isolated incidents to demonstrate a policy or custom. Lastly, Plaintiff's claims of a conspiracy are conclusory, as there are no allegations that Vannoy and LeBlanc colluded together to deprive Decedent (or anyone else) of his constitutional rights.

## 2. Applicable Law

### a. Qualified Immunity

"In determining whether an official enjoys immunity, we ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009).

" 'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (alterations and internal quotation marks omitted)). " 'Because the

focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.' " *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596 (2004) (per curiam)).

"Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted)). " 'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.' " *Id.* (quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted)).

" 'Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers.' " *Kisela*, 138 S. Ct. at 1153 (quoting *White*, 137 S. Ct. at 552 (internal quotation marks omitted)). "But . . . [a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.' " *Id.* (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)). "That is a necessary part of the qualified-immunity standard[.]" *Id.*

### b. Supervisory Liability

" 'Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.' " *Simon v. LeBlanc*, 694 F. App'x 260, 261 (5th Cir. 2017) (per curiam) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). " 'A supervisory official may be held liable . . . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury.' " *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v. Texas*

*Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)). " 'In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates.' " *Id.* (quoting *Gates*, 537 F.3d at 435 (internal quotation marks and citation omitted, alterations and emphasis in *Gates*)).

The Fifth Circuit has further explained:

> In a § 1983 claim for failure to supervise or train, the plaintiff must show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir. 1998). "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 912 (internal quotation omitted). To establish deliberate indifference, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small,* 325 F.3d 627, 637 (5th Cir. 2003) (internal quotation omitted). Where a plaintiff fails to establish deliberate indifference, the court need not address the other two prongs of supervisor liability. *Estate of Davis ex rel. McCully v. City of N. Richland Hills,* 406 F.3d 375, 382 (5th Cir. 2005). Furthermore, "for a supervisor to be liable for failure to train, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform." *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005) (quotations and citation omitted). Moreover, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Id.*

*Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009).

### c.  Bystander Liability

"[A]n officer may be liable under § 1983 under a theory of bystander liability where the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.' " *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citations omitted). "However, liability will not attach where an officer is not present at the scene of the constitutional violation." *Id.* (citations omitted). "In

resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer 'acquiesce[d] in' the alleged constitutional violation." *Id.* at 647 (citations omitted). Although bystander liability "most often applies in the context of excessive force claims, other constitutional violations also may support a theory of bystander liability." *Id.* at 646 n.11 (citations omitted).

### d. Conspiracy

"To prove a conspiracy under § 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred." *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).

Regarding the first element: "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (Rubin, J.). "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss." *Id.* (citing *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977)). "[M]ore than a blanket of accusation is necessary to support a § 1983 claim." *Id.* (citations omitted). Plaintiffs must make "specific allegation[s] of fact tending to show a prior agreement has been made." *See id.* at 1023–24.

But § 1983 conspiracy "claim need not [meet] a 'probability requirement at the pleading stage; [plausibility] simply calls for enough fact [s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.' " *Jabary*, 547 F. App'x at 610 (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. 1955). Plaintiffs' "facts, when 'placed in a context . . . [must raise] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.' " *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. 1955).

Thus, for instance, in *Jabary*, the plaintiff failed to sufficiently state a claim for a § 1983 conspiracy when he alleged "that local officials 'held private meetings to devise a method of shutting down [plaintiff's business]'[;] that they 'actively conspired' with each other to 'destroy [Plaintiff's] civil rights[;]' " and that "there were 'several conversations, private meetings, and other communications' that took place to further their conspiracy to 'deprive [Plaintiff] of his civil rights and the due process of the law.' " *Jabary*, 547 F. App'x at 611. The Fifth Circuit held:

> Such statements are conclusory in nature. Without more background facts, [Plaintiff] is unable to demonstrate the existence of the local officials' alleged agreement to the level of plausibility necessary to pass scrutiny under Rule 12(b)(6). The times, places, and other circumstances of the "private meetings" and secret conversations are notably absent. [Plaintiff] simply fails to create a reasonable inference that such an agreement existed.

*Id.* at 611.

### 3. Analysis

Preliminarily, the Court notes that Plaintiff specifically alleges in the *Amended Petition* that LeBlanc and Vannoy are sued in their "official capacity." (*Am. Pet.* ¶¶ 7–8, Doc. 28.) Thus, it is questionable as to whether Plaintiff can, despite arguments in his opposition, now assert that these Defendants are sued in their individual capacities.

But, even putting this aside, Plaintiff has failed to state viable § 1983 claims against LeBlanc and Vannoy for a number of reasons. First, Plaintiff fails in any way to allege any personal participation by these Defendants in what befell Decedent. They were not actively involved in Decedent's medical care, and there is no allegation (beyond mere conclusions of lumping all Defendants together) that they knew of any of his suicidal ideations or were aware of what was contained in the Decedent's medical records.

Plaintiff also fails to demonstrate that Vannoy and LeBlanc are liable for implementing or failing to implement constitutional policies or customs. Even assuming that Plaintiff's extensive

list of these Defendants' failures did constitute specific, identifiable "policies," (*see Am. Pet.*¶ 25, Doc. 28), Plaintiff's claims fail for lack of deliberate indifference. Again, Plaintiff wholly fails to allege beyond mere conclusions that these Defendants were aware of facts from which the inference could be drawn that a substantial risk of harm existed for Decedent and that they actually drew that inference. *See Goodman*, 571 F.3d at 395. Further, Defendants correctly note that failure to train and supervise claims (which make up the bulk of Plaintiff's allegations) typically require more than a single incident, *id.*, and, again, Plaintiff offers little of these beyond mere conclusions. While Plaintiff offers the *Lewis v. Cain* complaint to support his arguments, this is wholly insufficient, as (1) that document was not incorporated into the *Amended Petition* in this case, and (2) the *Lewis v. Cain* complaint offers mere allegations, and there has been no final determination in that case. *See Lewis*, No. 15-318, Docs. 544–54 (bench trial held in October 2018, but no decision rendered), 578 (stating via text order that the Court is "preparing to issue a Ruling on the merits" but finding that the "medical care at Angola State Penitentiary is unconstitutional in some respects," though they are not stated at this time).

Plaintiff also fails to allege either bystander liability or a § 1983 conspiracy. Again, bystander liability requires that the defendant be "present at the scene of the constitutional violation" and have a "reasonable opportunity to prevent the harm" *Whitley*, 726 F.3d at 646–47. Here, Plaintiff has alleged neither. Further, again, "[m]ere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss," *Arsenaux*, 726 F.2d at 1024, and the Fifth Circuit has indicated that a plaintiff must allege the "times, places, and other circumstances of" conspiratorial meetings, *Jabary*, 547 F. App'x at 611. Plaintiff has failed to do so.

For all these reasons, Plaintiff has failed to state a viable § 1983 claim against LeBlanc and Vannoy in their individual capacities. Accordingly, these claims are dismissed.

### C. ADA/RA Claims

#### 1. Parties' Arguments

Defendants argue that Plaintiff failed to satisfy the elements of ADA/RA claims. First, Plaintiff is not a "person with a disability" as defined by the ADA. Plaintiff merely alleges that he has "mental health issues which required the prescription of medication to treat his mental health issues and previously documented suicidal actions." (Doc. 33-1 at 20.) Plaintiff fails to demonstrate that he had a condition which "substantially limits an individual's ability to engage in major life activities." (Doc 33-1 at 20 (citation omitted).) Plaintiff fails to offer any allegations as to how his mental health condition limits his life activities. Thus, the claim fails for this reason. Further, Plaintiff fails to demonstrate the other elements of an ADA cause of action, as he is in essence complaining about the adequacy of medical treatment, which is insufficient for an ADA claim.

Plaintiff responds that the question of whether Mr. Conway, Jr., had a qualified disability "is a factual dispute that is best settled through the litigation process. At trial Plaintiff would have the opportunity to present an expert witness and the Defendant would have the opportunity to challenge the expert's testimony." (Doc. 38 at 12.) Critically, Plaintiff did not respond in any way to Plaintiff's arguments on the other two elements.

Defendants reply that Plaintiff's plea for further discovery was specifically rejected by the Court in its ruling on the last motion to dismiss. In any event, Plaintiff's argument again fails under the second and third prong of an ADA claim because, again, he is ultimately complaining about inadequate medical treatment, which is not a proper ADA claim.

## 2. Applicable Law

"Title II of the ADA provides: '[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.' " *Windham v. Harris Cty., Tex.*, 875 F.3d 229, 234–35 (5th Cir. 2017) (quoting 42 U.S.C. § 12132). Similarly, § 504 of the Rehabilitation Act provides in relevant part: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). Title II of the ADA and § 504 of the RA "have identical remedial schemes" and "are generally interpreted interchangeably[.]" *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 573–74 (5th Cir. 2018) (citations omitted); *see also Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002 (essentially the same).

A prisoner may bring claims against their jailors for disability discrimination under Title II of the ADA and Section 504 of the RA. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209–10, 118 S. Ct. 1952, 1954–55, 141 L. Ed. 2d 215 (1998); *see also, e.g.*, *Frame v. City of Arlington*, 657 F.3d 215, 224–25 (5th Cir. 2011). Indeed, the Fifth Circuit has made this point crystal clear: "[T]he ADA plainly covers state institutions without any exception that could cast the coverage of prisons into doubt." *Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999) (quoting *Yeskey*, 524 U.S. at 209). Some eight years after *Yeskey*, the Supreme Court itself again endorsed this construction. *United States v. Georgia*, 546 U.S. 151, 159, 126 S. Ct. 877, 881, 163 L. Ed. 2d 650 (2006) ("[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment, Title II validly abrogates state sovereign

immunity."); *accord Tennessee v. Lane*, 541 U.S. 509, 533–534, 124 S. Ct. 1978, 1988, 158 L. Ed. 2d 820 (2004).

To demonstrate a violation of either Title II of the ADA or § 504 of the RA, "a plaintiff must prove '(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability.' " *Miraglia*, 901 F.3d at 574 (quoting *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam)); *Windam*, 875 F.3d at 235 ("To make out a prima facie case under Title II, a plaintiff must show '(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.' " (quoting *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004)).

### 3. Analysis

Preliminarily, Plaintiff failed to meaningfully respond to the substance of Defendant's ADA/RA argument. Instead, as to the first prong, Plaintiff merely asked for further discovery (which this Court specifically said was improper in its prior *Ruling and Order* (Doc. 26 at 13)),[3]

---

[3] The Court specifically stated:

> Plaintiff attempts to sidestep these shortcomings and clear pleading deficiencies by asking the Court to "allow discovery to commence and be completed" before "revisit[ing] any motion to dismiss any named defendant for a failure to state a claim against said defendant." (Doc. 20 at 5). But Plaintiff misunderstands the purpose of a motion to dismiss under Rule 12(b)(6), which challenges only the sufficiency of the allegations in the complaint. Indeed, the Supreme Court is clear that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Plaintiff's complaint contains no actual facts from which the Court can infer a plausible § 1983 claim against either Vannoy or LeBlanc. Accordingly, the individual-capacity § 1983 claims are dismissed.

(Doc. 26 at 13.)

and, as to the second and third prong, Plaintiff made no response whatsoever.  On this ground

alone, the Court could grant Defendants' motion on the ADA/RA claims.  *See JMCB, LLC v. Bd.

of Commerce & Indus*., 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (deGravelles, J.) (finding that

operative complaint could be dismissed because plaintiff failed to respond to the substance of

defendant's arguments (numerous citations omitted)); *Apollo Energy, LLC v. Certain Underwriters

at Lloyd's, London*, 387 F. Supp. 3d 663, 672 (M.D. La. 2019) (deGravelles, J.)  (reaching same

result as to a particular issue (citing, *inter alia*, *JMCB*)).

Nevertheless, even assuming that Plaintiff had meaningfully responded, and even assuming

Plaintiff had adequately alleged that Decedent suffered from a qualifying disability, the Court

would dismiss Plaintiff's claim.

Defendants point to dicta from *Tassin v. Cain*, No. 15-570, 2016 WL 5844163 (M.D. La.

Aug. 3, 2016), *report and recommendation adopted*, No. 15-570, 2016 WL 5796883 (M.D. La.

Sept. 30, 2016), and this Court finds it persuasive.  In *Tassin*, a *pro se* prisoner had claimed, among

other things, inadequate medical attention for exposure to crop-dusting chemicals and in an

unrelated motor vehicle accident. *Id.*, 2016 WL 5844163, at *1.  The magistrate judge

recommended that the ADA/RA claims be dismissed for failure to exhaust administrative

remedies. *Id.*, 2016 WL 5844163, at *3.  However, in a footnote, the magistrate judge evaluated

the merits of the ADA/RA claims and explained:

> From a substantive perspective, Plaintiff's claims arising under the ADA and RA
> would fare no better. Specifically, courts have concluded that, when a "plaintiff's
> core complaint [is] incompetent treatment for his underlying medical condition,
> [s]uch a complaint does not state a claim for relief under the ADA because '[t]he
> ADA does not create a remedy for medical malpractice.' " *Brown v. Wilson*, 2012
> WL 6719464, *3 (N.D. Tex. Dec. 27, 2012), *quoting Moore v. Prison Health
> Services, Inc.*, 24 F. Supp. 2d 1164, 1168 (D. Kan. 1998), *affirmed*, 201 F.3d 448
> (10th Cir. 1999). *See also Nottingham v. Richardson*, 499 Fed. Appx. 368, 377 (5th
> Cir. 2012) (finding that "[t]he ADA is not violated by 'a prison's simply failing to
> attend to the medical needs of its disabled prisoners' "). The same finding is

> applicable under the RA because the basis for recovery under that statute is coextensive with the recovery obtainable under the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 185 (2002). Accordingly, inasmuch as the basis for Plaintiff's claim in this case is that prison officials have not properly or timely attended to his medical needs, his claims asserted under the ADA and RA are not properly before this Court.

*Id.*, 2016 WL 5844163, at *3 n.2. The district judge adopted the recommendation. *Id.*, 2016 WL 5796883, at *1.

Similar reasoning applies here; the essence of Plaintiff's claim is that Dr. Helms improperly prescribed Decedent Wellbutrin, which increased his chance of and ultimately led to his committing suicide. (*See Am. Pet.* ¶¶ 9, 17, Doc. 28.) This case is, at its heart, a claim that Helms was deliberately indifferent to Decedent's medical needs and otherwise negligent in his treatment of Decedent. But, again, the ADA does not support what is essentially a medical malpractice claim. *Tassin, supra* (quoting *Brown*, *supra*). Under the above cases, even if Decedent were disabled, Plaintiff has failed to satisfy the other elements of ADA/RA claims, so they must be dismissed. *See Nottingham*, 499 F. App'x at 377 ("There is no evidence that the allegedly improper action of leaving Nottingham [who allegedly could not walk] on the floor of the transit van had any connection to his alleged disability. There is no indication that he was treated differently because of his disability."); *Tassin, supra*; *Brown*, 2012 WL 6719464, at *3 (collecting cases on this issue and finding "The plaintiff in this action has stated no more than a claim which challenges the medical care provided for his medical condition [and][h]e has not stated a claim for relief under the ADA because he does not complain he has been 'denied the benefit of the services, programs, or activities' of the prison system due to discrimination based upon his disability." (quoting *Moore*, 24 F. Supp. 2d at 1168)).

### D. Leave to Amend

Federal Rules of Civil Procedure 15(a) "requires a trial court to grant leave to amend freely"; further "the language of this rule evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., LP,* 427 F.3d 987, 994 (5th Cir. 2005) (internal citations and quotations omitted). However, "leave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones*, 427 F.3d at 994). The Fifth Circuit further described the district courts' discretion on a motion to amend as follows:

> The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., and futility of the amendment." *Jones*, 427 F.3d at 994 (citation omitted). "In light of the presumption in favor of allowing pleading amendments, courts of appeals routinely hold that a district court's failure to provide an adequate explanation to support its denial of leave to amend justifies reversal.*" Mayeaux v. La. Health Serv. & Indent. Co.*, 376 F.3d 420, 426 (5th Cir. 2004) (citation omitted). However, when the justification for the denial is "readily apparent," a failure to explain "is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend." *Id.* (citation and internal quotation marks omitted).

*Id.*, 751 F.3d at 378.

In addition, the Fifth Circuit has made clear that "denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile." *Id.* (citing *Boggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)). An amendment would be deemed futile "if it would fail to survive a Rule 12(b)(6) motion." *Id.*

Here, the Court will deny Plaintiff further leave to amend. Plaintiff was previously given an opportunity to amend following the Court's ruling on these Defendants' original motion to

dismiss. (Doc. 26 at 13.) Given the numerous conclusory allegations and prior opportunity to amend, the Court finds that further amendment would be futile.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 33) filed by Defendants the State, DPSC, LeBlanc, and Vannoy is **GRANTED IN PART** and **DENIED IN PART;**

**IT IS FURTHER ORDERED** that the following claims are **DISMISSED WITHOUT PREJUDICE:** (1) Plaintiff's claims against the State and DPSC, and (2) Plaintiff's § 1983 claims against LeBlanc and Vannoy in their official capacities.

**IT IS FURTHER ORDERED** that the following claims are **DISMISSED WITH PREJUDICE:** (1) Plaintiff's Section 1983 claims against LeBlanc and Vannoy in their individual capacities, and (2) Plaintiff's ADA claims.

**IT IS FURTHER ORDERED** that, in all other respects, Defendants' motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>March 3, 2020</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**